JOHN E. GERLACH REALTY COMPANY, Respondent, *v.* PLACID REALTY COMPANY, Appellant.

First Department, February 7, 1919.

**Real property — vendor and purchaser — action to recover earnest money — unmarketable title.**

Suit to recover earnest moneys paid by the plaintiff on a contract for the conveyance of real estate. Title to the property examined, and *held,* to be unmarketable in that the heirs of a former owner were not estopped from claiming a three-foot strip of the property and that a judgment for the plaintiff should be affirmed.

APPEAL by the defendant, Placid Realty Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 22d day of May, 1917, upon the decision of the court after a trial at the New York Special Term.

The judgment declared the title to certain real estate to be unmarketable and directed that plaintiff recover $1,000 earnest money paid by it to defendant together with the expenses of the examination of the title.

*Frederick Lese* of counsel [*I. Maurice Wormser* with him on the brief; *Lese & Connolly*, attorneys], for the appellant.

*Richard O'Gorman* of counsel [*R. & E. J. O'Gorman*, attorneys], for the respondent.

SMITH, J.:

The defendant entered into a contract to convey to the plaintiff a parcel of land forty-four feet and eleven inches wide fronting on the easterly side of St. Nicholas avenue in upper Manhattan on which was located a six-story apartment house. The northerly portion of the parcel was a part of a tract of land formerly owned by one William G. Ward and prior thereto by Alexander Hamilton, and the southerly portion was a part of a tract of land formerly owned by the Pentz estate. By certain conveyances one Thompson acquired title to the northerly portion from the Ward estate and to the southerly portion from the Pentz estate. In these conveyances the description of the northerly portion commenced six hundred and eight feet nine and one-quarter inches southerly from One Hundred and Forty-fifth street and extended southerly ten feet and nine inches, while the southerly portion commenced three hundred and thirty-nine feet four inches northerly from One Hundred and Forty-first street and extended northerly thirty-one feet and two inches. As the total distance between One Hundred and Forty-first street and One Hundred and Forty-fifth street is about nine hundred and ninety-three feet three-quarters of an inch, the two portions of the forty-four foot eleven-inch parcel failed to come together by about three feet.

The owner of these two portions recognizing this possible failure of title obtained from the Pentz estate a quitclaim

deed of all interest in land three feet more or less up to the Ward property but did not obtain a deed from the Ward estate of the three-foot strip. The controversy in this action has arisen over the possible outstanding title to this three-foot strip in the Ward estate.

William G. Ward had acquired title to a large tract of land known as Hamilton Grange from the Hamilton heirs and after the death of Ward his heirs prepared and filed a map of said tract in the year 1868. Certain people of the name of Pentz had acquired title to a large tract of land south of the Hamilton tract by conveyances which described the land as bounded on the north by the Hamilton land. The Pentz people also filed certain maps of their tract of land; one in 1862, one in 1872 and one in 1884, none of which harmonizes exactly with any other.

A consideration of these different maps filed by the Wards and the Pentz heirs, together with the conveyances, is necessary in endeavoring to arrive at a disposition of the controversy in this action.

The map filed by the Wards in 1868, plaintiff's exhibit 11, shows a series of lots on the easterly side of St. Nicholas avenue extending six hundred and nineteen feet six and one-quarter inches southerly from One Hundred and Forty-fifth street, the last lot to the south having a frontage of ten feet nine inches. The southerly line of said lots is shown on the map by a broken dash line, which line apparently continues entirely around the tract and, while on the course of the southerly line of the series of lots above mentioned this broken line is not designated by any words, on the courses next adjoining this southerly line, each way, the words " picket fence " appear. Furthermore on this map, south of the broken line forming the southerly line of the above-mentioned lot having a frontage of ten feet nine inches the words " Property of Fredr. W., Wm. A. F. and John Pentz " appear. This map hence becomes a representation by the Ward heirs that their property on the easterly side of St. Nicholas avenue extended six hundred and nineteen feet six and one-quarter inches southerly from One Hundred and Forty-fifth street and that south of and adjoining that property was the Pentz property.

The maps filed by the Pentz people do not agree as to the frontage owned by them on the easterly side of St. Nicholas avenue. The first map, plaintiff's exhibit 7, was filed in 1862 before St. Nicholas avenue was opened and hence does not show that avenue, but plaintiff's witness Tuttle has computed the frontage that map would show on St. Nicholas avenue, superimposed thereon, as three hundred and seventy-two feet ten inches on the easterly side of St. Nicholas avenue northerly from One Hundred and Forty-first street, bringing the northerly line of the Pentz land, as shown by this map, within eight and three-quarter inches of the southerly line of the Ward land as shown by their map of 1868. This Pentz map of 1862 also shows a " picket fence " along this northerly line.

The Pentz map of 1872 shows a frontage on the easterly line of St. Nicholas avenue of three hundred and seventy-three feet and two inches, bringing their northerly line within four and three-quarter inches of the southerly line shown on the Ward map.

The Pentz map of 1884 shows their northerly line as three hundred and seventy feet and five inches north of One Hundred and Forty-first street. This brings the north line of the Pentz lots three feet one and three-quarter inches from the southerly Ward line shown on their map.

None of these Pentz maps has any statement on them that the Ward land adjoins the Pentz land on the north, and the most that can be claimed from the variation in the different maps with reference to the northerly line indicates that the Pentz people were uncertain as to just how many feet they owned on the easterly side of St. Nicholas avenue north of One Hundred and Forty-first street, but the fact remains that the conveyances into the Pentzes show their land bounded on the north by the Ward land and that a picket fence was shown on the Pentz northerly line by the map of 1862. It may fairly be inferred that the broken dash line on the Ward map above mentioned indicates a picket fence and it may be inferred from all the proofs that the picket fence shown on the Pentz map of 1862 and the picket fence indicated on the Ward map were identical.

This being the situation so far as maps and deeds show the boundary line between the Ward and Pentz land, Thompson

above mentioned obtained a deed of the southerly parcel of the Ward land fronting ten feet nine inches on the easterly side of St. Nicholas avenue as shown on the Ward map by a deed dated May 28, 1885, from Patrick O'Brien, who had received a deed of the same parcel from the Wards, dated April 9, 1885. Thompson also received a deed dated August 1, 1884, but not acknowledged till February 1, 1886, from the Pentz estate of the thirty-one feet two-inch lot, three hundred and thirty-nine feet four inches north of One Hundred and Forty-first street and later by deed dated December 22, 1887, received title to all of the Pentz interest in land north of the last-mentioned lot up to the southerly line of the Ward lot.

From these conveyances it is apparent that Thompson had some interest in the Pentz lot prior to the execution of the Pentz deed in 1886 as the deed is dated in 1884, and, having such interest, took a conveyance from the Ward heirs of the southerly lot shown on the Ward map in possible reliance on the representations of that map that the land of the Pentz adjoined that southerly Ward lot and then took title to the northerly lot of the Pentz tract and of any interest the Pentz people had in the land up to the Ward land. There is, however, no evidence that Thompson knew of the existence of the Ward map of 1868. None of the deeds from the Wards or their grantees specifically referred to this map. They all of them, however, referred to a map on file with the commissioner of taxes. That map was not introduced in evidence, so that we are not informed whether it contained any representation that the Pentz land met the Ward land at the point six hundred and nineteen feet six inches south of One Hundred and Forty-fifth street. There is nothing in the record, therefore, which would estop the Ward heirs from now claiming that the southerly line of their property was in fact three feet south of the line represented on their map. It follows then that the judgment must be affirmed, with costs.

CLARKE, P. J., LAUGHLIN, SHEARN and MERRELL, JJ., concurred.

Judgment affirmed, with costs.